NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**G-I HOLDINGS INC.,** *et al.,*<br><br>        **Debtors** | **On Appeal from an Order Entered by The United States Bankruptcy Court for the District of New Jersey (Hon. Rosemary Gambardella, U.S.B.J.)** |
| **G-I HOLDINGS INC., BUILDING MATERIALS CORPORATION OF AMERICA d/b/a GAF MATERIALS CORPORATION, GAF CORPORATION, JOHN AND JANE DOES 1-20, and ABC COMPANIES 1-20,**<br><br>        **Appellants,**<br><br>        v.<br><br>**ASHLAND INC., INTERNATIONAL SPECIALTY PRODUCTS INC., and ISP ENVIRONMENTAL SERVICES INC.,**<br><br>        **Appellees.** | **Case Nos. 01-30135 (RG) and 01-38790 (RG) (Jointly Administered)**<br><br>**Adv. Pro. No. 15-02379 (RG)**<br><br>**Civil Action No. 17-0077**<br><br>**OPINION** |

SALAS, DISTRICT JUDGE

I.    **INTRODUCTION**

     Who must pay for the cleanup of a 26-acre toxic industrial site in Linden, New Jersey? That's what this case is about. This appeal, however, is about bankruptcy jurisdiction—specifically, whether the Bankruptcy Court was required to retain, or should have retained, jurisdiction over this case rather than remand it back to state court.

G-I Appellants[1] want to be in Bankruptcy Court. After ISP Appellees[2] sued them in the Superior Court of New Jersey for breach of contract and related indemnification claims, G-I Appellants removed the case to Bankruptcy Court, arguing that the Bankruptcy Court has "arising in" jurisdiction (because, they say, the case could not exist outside of G-I's bankruptcy). Alternatively, G-I Appellants argue that the Bankruptcy Court has "related to" jurisdiction (because the case could have an effect on administering G-I's estate in bankruptcy) and that neither mandatory abstention nor permissive abstention applies. Once in Bankruptcy Court, ISP Appellees moved before the Hon. Rosemary Gambardella, U.S.B.J., to remand the case back to state court. They argued that the Bankruptcy Court lacks "arising in" jurisdiction because the case is a straightforward contract dispute (and thus *could* exist outside of G-I's bankruptcy). And even if the Bankruptcy Court has "related to" jurisdiction, both mandatory and permissive abstention apply. Judge Gambardella agreed with ISP Appellees on each point and granted their motion to remand.

G-I Appellants raise three issues on appeal. *First*, whether the Bankruptcy Court erred by not finding the existence of "arising in" jurisdiction. *Second*, whether the Bankruptcy Court erred in concluding that it was required to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(2) ("mandatory abstention"). *Third*, whether the Bankruptcy Court erred and abused its discretion in determining that it was permitted to abstain from exercising jurisdiction under 28 U.S.C. § 1334(c)(1) ("permissive abstention").

---

[1]     The Court uses "G-I Appellants" to refer collectively to G-I Holdings Inc. ("G-I"), Building Materials Corporation of America d/b/a GAF Materials Corporation ("GAF BMC"), and GAF Corporation ("GAF").

[2]     The Court uses "ISP Appellees" to refer collectively to Ashland Inc. ("Ashland"), International Specialty Products Inc. ("ISP"), and ISP Environmental Services Inc. ("IES").

The Court finds that the Bankruptcy Court lacks "arising in" jurisdiction and that both mandatory abstention and permissive abstention apply. Accordingly, the Court AFFIRMS the Bankruptcy Court's Order remanding this case to state court.

## II.   FACTUAL BACKGROUND

### A.  The LCP Site

The LCP Site is a 26-acre property in an industrial area in Linden, New Jersey. (D.E. No. 18 ("Mov. Br.") at 6). From the early 1950s to 1972, GAF Corporation (the corporate predecessor to G-I) owned and operated a chemical manufacturing facility on the LCP Site. (*Id.*; D.E. No. 25 ("Opp. Br.") at 10). In 1972, GAF Corporation sold the LCP Site to another company, which continued to manufacture chemicals on the property until 1985. (*Id.*).

In 1994, the U.S. Environmental Protection Agency ("EPA") began investigating the LCP Site for toxic contamination. (D.E. No. 18-2 at A49-50). In early 1999, the EPA issued an Administrative Order on Consent ("Consent Order") with ISP[3] pursuant to its authority under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). (D.E. No. 18-3 at A75). The Consent Order required ISP to perform a costly and time-consuming remedial investigation and feasibility study ("RI/FS") at the LCP Site. (*See id.* at A110-24). IES[4] completed the RI/FS for the LCP Site in 2013, expending "millions of dollars" in the process. (D.E. No. 18-2 at A50).

Following IES's completion of the RI/FS, the EPA issued its Record of Decision ("EPA Decision"), which identified a $36.3 million remedy to address contamination associated with the

---

[3]      At the time, ISP was a subsidiary of GAF Chemicals Corporation ("GAF Chemicals"). (Opp. Br. at 10; D.E. No. 18-2 at A47). In 2011, Ashland acquired ISP and IES, ISP's subsidiary. (D.E. No. 18-2 at A47).

[4]      ISP Appellees maintain that the "GAF Corporation and/or its corporate parent" volunteered its subsidiary, IES, to enter into the Consent Order. (*Id.* at A50).

LCP Site. (*Id.* at A51). Although the EPA sought commitments from various parties, including IES, to implement its selected remedy, those efforts were unsuccessful. (*Id.*). Consequently, on May 20, 2015, the EPA issued a Unilateral Administrative Order ("EPA Unilateral Order") requiring IES and another entity to perform the selected remedy set forth in the EPA Decision. (*Id.*). The EPA Unilateral Order imposed civil penalties of as much as $37,500 per day for failure to comply. (*Id.*).

To be sure, the EPA was not the only government agency involved in the LCP Site's cleanup (or seeking damages related thereto). In 1999, the National Oceanic and Atmospheric Administration ("NOAA") and the U.S. Department of the Interior ("DOI"), as joint federal trustees, "began to investigate the potential impacts of releases of hazardous substances at and from the LCP Site on natural resources in and around the LCP Site." (*Id.* at A52). NOAA and DOI thereafter commenced a natural resources damages assessment (the "Assessment") pursuant to regulations promulgated under CERCLA. (*Id.*). In 2012, IES entered into an agreement[5] with NOAA and DOI "to contribute resources to investigations being conducted by NOAA and DOI in support of" the Assessment. (*Id.*). According to ISP Appellees' Complaint, "NOAA and DOI intend to recover from [ISP Appellees] and other parties an unreimbursed portion of the more than $600,000 they have expended on investigations in support of the [Assessment]." (*Id.* at A53). The Complaint adds that "NOAA and DOI are continuing to expend, and will continue to expend, substantial sums to support and conduct the [Assessment]." (*Id.*).

ISP Appellees maintain that the "EPA and other government agencies asserted claims against [them] on the erroneous ground that IES is the successor to, or guarantor of, GAF Corporation." (Opp. Br. at 11). As a result, ISP Appellees argue that they "now face claims for

---

[5]     ISP Appellees' Complaint notes that IES entered into this agreement "without admitting liability" and "to maintain a non-adversarial relationship with the federal trustees." (*Id.*).

substantial damages arising out of liabilities for which [G-I Appellants] are contractually obligated to indemnify them." (*Id.*).

## B. 1996 Indemnification Agreement

On October 18, 1996, ISP Holdings, LLC (ISP's and IES's corporate parent) entered into an indemnification agreement (the "1996 Indemnification Agreement") with GAF, GAF Chemicals, G-I, and G Industries Corp. (Mov. Br. at 7). Article 2.2(a) of the 1996 Indemnification Agreement provides that:

> GAF and G-I [] shall jointly and severally indemnify, defend and hold harmless ISP [], its Post Spin Subsidiaries and each of their respective present and future Representatives and Affiliates from and against all GAF Liabilities and any and all Indemnifiable Losses of ISP [], its Post Spin Subsidiaries and each of their Representatives and Affiliates arising out of or due to, directly or indirectly, the GAF Liabilities, whether such GAF Liabilities arose before, or arise after, the Spin Off Date.

(D.E. No. 18-4 at A286). "GAF Liabilities" is defined in Article 1.1 of the 1996 Indemnification Agreement to include "all of the Liabilities of the GAF Group . . . including . . . Environmental Matters . . . [and] Litigation Matters . . . , whether arising before, during or after the Spin Off Transactions." (*Id.* at A283). The term "Liabilities" is defined as "all debts, liabilities, expenses, costs and obligations of any kind, whether accrued, fixed, contingent, liquidated, unliquidated, or reflected on a balance sheet and whenever arising, whether or not covered by insurance." (*Id.* at A284).

ISP Appellees argue that G-I specifically assumed the 1996 Indemnification Agreement as part of its Chapter 11 Bankruptcy Plan and, consequently, is responsible for the environmental liabilities associated with the EPA's Unilateral Order and the NOAA and DOI's Assessment. (*See* Opp. Br. at 11-12).

## C. G-I's Bankruptcy

In late 2000, GAF, GAF BMC, G Industries, and other entities merged into G-I. (Mov. Br. at 9). On January 5, 2001, G-I filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (*Id.*). On November 12, 2009, the District Court and the Bankruptcy Court entered a Confirmation Order confirming G-I's Plan (the "Plan"). (*Id.* at 11; Opp. Br. at 11; D.E No. 18-5 at A342). The Plan became effective on November 17, 2009. (D.E No. 18-5 at A342).

G-I Appellants argue that the Confirmation Order and Plan "provided for a full discharge of all 'Claims' asserted against G-I, and enjoined all holders of 'Claims' from prosecuting or asserting any discharged claims against G-I." (Mov. Br. at 11). While G-I Appellants concede that "G-I elected to assume the 1996 Indemnification Agreement as an executory contract," they argue that the Plan[6] extinguishes any liability associated with the LCP Site because "[n]one of the ISP Appellees asserted any default with respect to the 1996 Indemnification Agreement prior to its assumption." (*Id.* at 11, 13-14).

ISP Appellees argue that their claims do not seek pre-petition or even pre-confirmation indemnification, but rather *post-confirmation* indemnification for events occurring in 2015—namely, to cover damages associated with implementing the EPA's $36.3 million remedy and funding the NOAA and DOI's Assessment.

---

[6] G-I Appellants point to Section 7.1 of the Plan, titled, "Cure of Defaults and Survival of Contingent Claims under Assumed Executory Contracts and Unexpired Leases." (*Id.*).

### III.    PROCEDURAL HISTORY

**A. ISP Appellees' Complaint, G-I Appellants' Removal Motion, and ISP Appellees' Remand Motion**

On September 30, 2015, ISP Appellees filed their Complaint in the Superior Court of New Jersey, Morris County, Civil Division as a Track IV – Complex Commercial Case.[7]  (D.E. No. 18-2 at A43-74).  The Complaint includes four causes of action against G-I Appellants, all based on the 1996 Indemnification Agreement.  (*Id.* at A60-71).  As ISP Appellees explain:

> Count One is a broad declaratory judgment request for contract (Indemnification Agreement) interpretation.  Counts Two, Three, and Four also relate to the same matters and are set forth as breach of contract, breach of covenant, and unjust enrichment claims, all related to post-confirmation amounts that have been spent (based upon what the public agencies recently required) and what will be spent.

(Opp. Br. at 13).

On November 4, 2015, G-I Appellants removed the case to Bankruptcy Court.  (Mov. Br. at 17; Opp. Br. at 13).  Shortly thereafter, ISP Appellees moved to remand the case back to state court (the "Remand Motion").  (*Id.*).  On June 2, 2016, the Hon. Rosemary Gambardella, U.S.B.J., heard oral arguments on ISP Appellees' Remand Motion.  (*Id.*; *see also* D.E. No. 2-25, Transcript of Motion Hearing ("Tr.")).

**B.  Judge Gambardella's Remand Opinion**

On December 21, 2016, the Bankruptcy Court issued its Opinion and Order granting ISP Appellees' Remand Motion.[8]  (D.E. No. 18-8 at A841-900 ("Remand Opinion"); D.E. No. 18-8 at A906-07 ("Remand Order")).  *First*, the Bankruptcy Court found that it did not have "arising in"

---

[7]        *Ashland Inc., et al. v. G-I Holdings Inc., et al.*, Docket No. MRS-L-2331-15 (N.J. Sup. Ct., Law Div. Sept. 30, 2015).  The Court refers to the action subject to this appeal as the "Adversary Proceeding."

[8]        The Court will discuss only those portions of the Remand Opinion that are relevant to G-I Appellants' appeal.

jurisdiction because ISP Appellees' "causes of action exist outside of bankruptcy."[9] (Remand Opinion at A893) (citing *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 267 (3d Cir. 1991)).[10] The Bankruptcy Court explained that "[a]lthough [ISP Appellees'] causes of action and [G-I Appellants'] defenses might necessitate interpretation of the Bankruptcy Code and Orders entered by this Bankruptcy Court, the action for breach of the 1996 Indemnification Agreement exists outside the bankruptcy." (*Id.*). The Bankruptcy Court added that the "other causes of action raised by the Complaint, a declaratory judgment as to liability, breaches of the implied covenant of good faith and fair dealing and unjust enrichment, similarly, exist outside the bankruptcy." (*Id.*).

*Second*, the Bankruptcy Court found that it had "related to" jurisdiction because "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." (*Id.* at A894) (citing *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). Specifically, the Bankruptcy Court explained that "although the litigation in large part involves application of state contract and corporate law, [G-I Appellants] posit[] a scenario that may require interpretation of the Plan and the application of the bankruptcy law concerning discharge." (*Id.* at A896).

*Third*, the Bankruptcy Court found that abstention was required under 28 U.S.C. § 1334(c)(2)[11] ("mandatory abstention"), and even if not required, abstention was warranted under

---

[9]     ISP Appellees argued before the Bankruptcy Court, and again on appeal before this Court, that the well-pleaded complaint rule precludes "arising in" jurisdiction because their Complaint does not reference federal law. (Remand Opinion at A893; Opp. Br. at 26). Judge Gambardella disagreed, finding that the "well-pleaded complaint rule is *only* applicable to an analysis of 'arising under' bankruptcy court jurisdiction." (Remand Opinion at A893). Because the Court finds that no "arising in" jurisdiction exists, it need not reach ISP Appellees' argument on appeal that the well-pleaded complaint rule precludes subject-matter jurisdiction.

[10]     Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

[11]     "Upon a timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2).

§ 1334(c)(1)[12] ("permissive abstention"). (*Id.*). As to mandatory abstention, the Bankruptcy Court considered the six applicable factors and found that (1) ISP Appellees made a timely motion to remand; (2) ISP Appellees' Complaint asserts state law claims for breach of contract and other related relief; (3) those claims are "related to" a bankruptcy case, but do not "arise under" or "arise in" a bankruptcy case (even though G-I Appellants' defenses potentially involve application of the Confirmation Order, Plan, and Discharge Injunction); (4) federal courts would not have jurisdiction over the Adversary Proceeding absent its relation to the bankruptcy case; (5) ISP Appellees properly "commenced" the Adversary Proceeding in the Superior Court of New Jersey, Morris County, where G-I Appellants are located; and (6) the Adversary Proceeding can be timely adjudicated[13] in state court. (*Id.* at A896-97).

As to permissive abstention, the Bankruptcy Court explained that it has "broad discretion to abstain from hearing state law claims whenever appropriate in the interest of justice, or in the interest of comity with State courts or respect for State law." (*Id.* at A899) (citing *In re Gober*, 100 F.3d 1195, 1206 (5th Cir. 1996)). The Bankruptcy Court noted that both abstention analyses require consideration of many of the same factors, but the permissive-abstention analysis is "more substantially grounded in equity." (*Id.*). To that end, the Bankruptcy Court observed that "G-I's Plan was confirmed some seven years ago and is virtually fully consummated with the exception of certain residual claims proceedings." (*Id.*). And "[b]ankruptcy court jurisdiction does not

---

[12]     "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1).

[13]     In assessing the timeliness issue, the Bankruptcy Court considered the following four factors: (1) backlog of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate. (*Id.* at A897) (citing *In re Carriage House Condos. L.P.*, 415 B.R. 133, 144 (Bankr. E.D. Pa. 2009)).

extend indefinitely after confirmation." (*Id.*) (citing *In re Superior Air Parts, Inc.*, 516 B.R. 85, 98 (Bankr. N.D. Tex. 2014)).

Further, the Bankruptcy Court explained that "[t]his action primarily concerns resolution of a state law breach of contract claim and other related relief." (*Id.*). And "[a]lthough resolution of the action may necessarily require interpretation of the Bankruptcy Code and Confirmed Plan, the state court is fully capable of resolving claims, such as this, that may require interpretation of Bankruptcy Court orders." (*Id.*). In addition, the Bankruptcy Court found that "resolution of this case will not affect the distribution to creditors and is unlikely to unduly impact the administration of the state." (*Id.* at A899-900). The Bankruptcy Court also noted that GAF BMC, a named defendant in this action, is not a debtor, which "weighs in favor of abstention." (*Id.* at A900) (citing *In re Semcrude, L.P.*, 442 B.R. 258, 276 (Bankr. D. Del. 2010)). Accordingly, the Bankruptcy Court found that, even if mandatory abstention does not apply, permissive abstention is appropriate. (*Id.*).

### C. G-I Appellants' Appeal

On January 4, 2017, G-I Appellants filed a Notice of Appeal with the Bankruptcy Court. (D.E. No. 18-8 at A901-05). Two days later, G-I Appellants moved before the Bankruptcy Court to stay the Remand Order pending its appeal to the District Court. (D.E. No. 2-14). On January 11, 2017, the Bankruptcy Court issued the Remand Order but stayed transmittal to the Superior Court pending its ruling on the G-I Appellants' motion to stay. (*See* Remand Order at A907). The Bankruptcy Court subsequently denied the motion to stay, but imposed a short interim stay to allow G-I Appellants to seek a stay of remand from the District Court. (Opp. Br. at 14).

On February 11, 2017, G-I Appellants filed an emergency motion before this Court seeking (i) to stay the Remand Order pending appeal; and (ii) to expedite review of the appeal on the merits. (D.E. No. 2). Three days later, the Court ordered expedited briefing on G-I Appellants' emergency

motion. (D.E. No. 6). The Court then entered a Consent Order extending the interim stay for forty-five days "to allow for expedited briefing and disposition of the Appeal." (D.E. No. 17). The parties subsequently consented to a two-week extension of the interim stay. (D.E. No. 28).

The Court has jurisdiction over this appeal under 28 U.S.C. § 158(a). The appeal is timely under Federal Rule of Bankruptcy Procedure 8002(a)(2). The Court has considered the parties' submissions in support of and in opposition to the appeal and decides the matter without oral argument under Bankruptcy Rule 8019. The appeal is now ripe for review.

## IV.    STANDARD OF REVIEW

In reviewing a bankruptcy court's decision, a district court "applies a clearly erroneous standard to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992). "With mixed questions of law and fact, the court must accept the bankruptcy court's 'finding of history or narrative facts unless clearly erroneous, but exercises 'plenary review of the bankruptcy court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *In re SemCrude, L.P.*, 2012 WL 5554819, at *2 (D. Del. Nov. 15, 2012) (alterations omitted) (citing *Mellon Bank, N.A. v. Metro Comms., Inc.*, 945 F.2d 635, 642 (3d Cir. 1991)).

The parties' briefs suggest a dispute over the proper standard of review. (*See* Mov. Br. at 5; Opp. Br. at 8; D.E. No. 26 ("Rep. Br.") at 4-5). G-I Appellants put it simply: the Court should review *de novo* the Bankruptcy Court's decisions regarding "arising in" jurisdiction and mandatory abstention, and review for abuse of discretion the Bankruptcy Court's permissive-abstention decision. (Mov. Br. at 5). ISP Appellees counter that G-I Appellants "incorrectly collapse the applicable standard of review on jurisdiction and abstention matters into a broad 'plenary review' standard . . . [and] ignore that the pertinent issues on this appeal [] are largely factual." (Opp. Br.

at 8). ISP Appellees then remind the Court that "[r]eview of facts under the 'clearly erroneous' standard is significantly deferential and requires 'definite and firm conviction that a mistake has been committed.'" (*Id.*) (citing *In re CellNet Data Sys.*, 327 F.3d 242, 244 (3d Cir. 2003)). On reply, G-I Appellants assure the Court that it "need not heed the ISP Appellees' . . . misplaced reliance upon the 'clear error' standard of review," because "[a]ll of the issues concerning 'arising in' jurisdiction and mandatory abstention are legal determinations to be reviewed *de novo*." (Rep. Br. at 4).

Fighting words notwithstanding, the parties actually appear to agree on the proper standard of review. Indeed, G-I Appellants acknowledge that the Court *would* apply a "clearly erroneous" standard to the Bankruptcy Court's factual findings; they just maintain that "the Bankruptcy Court made no factual findings that would call for deference." (*Id.* at 5). G-I Appellants add that "even if it had [made factual findings], this Court would not be limited to the 'clearly erroneous' standard, but would exercise plenary review of the bankruptcy court's choice and interpretations of legal precepts and its application of those precepts to the historical facts." (*Id.*) (alterations omitted). But that's precisely the position ISP Appellees take when they ask the Court to break down mixed questions of law and fact and apply the appropriate standard to each component. (Opp. Br. at 8). The parties' dispute, therefore, does not appear to be about the proper standard of review, but rather about the scope of Judge Gambardella's Remand Opinion. The Court will apply "a clearly erroneous standard to findings of fact, conduct[ a] plenary review of conclusions of law, and [] break down mixed questions of law and fact, applying the appropriate standard to each component." *Meridian Bank*, 958 F.2d at 1229.

## V.    DISCUSSION

### A.  "Arising in" Jurisdiction

As an initial matter, "[f]ederal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and Statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As Professor Charles Alan Wright observes, "parties cannot confer on the federal court jurisdiction that has not been vested in the court by the Constitution and Congress."  *In re Morrissey*, 717 F.2d 100, 102 (3d Cir. 1983) (citing C. Wright, *Law of Federal Courts* 23 (4th ed. 1983)).  Moreover, "parties cannot waive lack of jurisdiction even by express consent."  *Id.*

"Bankruptcy jurisdiction[14] extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11."  *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006).  With respect to "arising in" jurisdiction, the Third Circuit has explained that proceedings "aris[e] in" bankruptcy cases "if they have no existence outside of the bankruptcy."  *Id.* (explaining that such proceedings include "administrative matters, orders to turn over property of the estate and determinations of the validity, extent, or priority of liens").  "[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."  *In re Seven Fields Dev. Corp.*, 505 F.3d 237, 260 (3d Cir. 2007).

Once a bankruptcy court determines that it has subject-matter jurisdiction, it then must determine whether the proceeding is "core" or "non-core."  *See Exec. Benefits Ins. Agency v.*

---

[14]    A Standing Order in the District of New Jersey refers all bankruptcy cases to the bankruptcy court.  *See* July 10, 1984, D.N.J. Standing Order of 1984, http://www.njd.uscourts.gov/sites/njd/files/StandingOrder1984.pdf ("Any or all cases under Title 11 of the United States Code and any or all proceedings arising under Title 11 of the United States Code, or arising in or relating to a case under Title 11 of the United States Code shall be referred to the bankruptcy judges for the district.").

*Arkison,* 134 S. Ct. 2165, 2171 (2014). A proceeding is core if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Guild & Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3d Cir. 1996). Non-core proceedings, on the other hand, are proceedings that are not core "but are otherwise related to a case under title 11." *Exec. Benefits Ins. Agency,* 134 S. Ct. at 2171. These determinations are important because if a proceeding is core, the bankruptcy court may "enter final judgment on the claim, subject to appellate review by the district court." *Id.* at 2172. But if a proceeding is non-core, the bankruptcy court "must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment." *Id.*

Most importantly, however, determining whether a proceeding is core or non-core "does not affect the bankruptcy court's power to hear the case. Rather, it affects the form of the court's disposition, i.e., whether it is final and appealable to the district court, or a report and recommendation to be reviewed by the district court." *In re Mullarkey,* 536 F.3d at 222; *see also Stern v. Marshall,* 564 U.S. 462, 480 (2011) (explaining that 28 U.S.C. § 157's distinction between core and non-core proceedings "does not implicate questions of subject matter jurisdiction").

GI-Appellants contend that the Bankruptcy Court erred as a matter of law when it held that it lacks "arising in" jurisdiction over the Adversary Proceeding. (Mov. Br at 20). G-I Appellants argue that the Bankruptcy Court considered only "the four causes of action asserted by the ISP Appellees" and "whether such causes of action could ever be asserted in state court, but did not consider how the ISP Appellees' claims were pled nor take into account the fact that they are not only inextricably intertwined with, but in fact derive from, G-I's Chapter 11 bankruptcy case." (*Id.*). To that end, G-I Appellants maintain that ISP Appellees' claims "will unquestionably require the interpretation and construction of the Plan and bankruptcy law," and, consequently, "this

Adversary Proceeding falls within the realm of 'core' jurisdiction."  (*Id.* at 20-21).  Thus, the gravamen of G-I Appellants' argument is that, because the Bankruptcy Court has "core" jurisdiction over ISP Appellees' claims, the Bankruptcy Court inexorably has "arising in" jurisdiction over the Adversary Proceeding.  (*See id.*).

G-I Appellants, however, flip the relevant legal analysis on its head.  Although 28 U.S.C. § 157(b) sets out the differences between "core" and "non-core" proceedings, it does not provide bankruptcy courts with an independent source of subject-matter jurisdiction.  *See Walnut Assocs. v. Saidel*, 164 B.R. 487, 495 (Bankr. E.D. Pa. 1994) (explaining that § 157(b) "merely allocates the jurisdiction created by 28 U.S.C. § 1334 between core and non-core proceedings").  Indeed, "[w]hether a particular proceeding is core represents a question wholly separate from that of subject matter jurisdiction."  *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d at 266.

A bankruptcy court does not arrive at the issue of core or non-core jurisdiction—that is, whether it is permitted to enter a final order in the matter—without a threshold finding that it has subject-matter jurisdiction to hear the case.  *See id.* (explaining that a bankruptcy court might have subject-matter jurisdiction over a proceeding, but 28 U.S.C. § 157 might nevertheless prevent it from entering final judgments and orders).  Thus,

> a determination of whether a matter is core or non-core is unnecessary in an inquiry of whether there is federal jurisdiction over a bankruptcy proceeding, as both categories of cases are within federal jurisdiction and the [core or non-core] determination only impacts on the question of whether a bankruptcy court has the authority to enter final judgments and orders under § 157.

*In re Seven Fields Dev. Corp.*, 505 at 257.

So, to determine whether the Bankruptcy Court has "arising in" jurisdiction here, the proper analytical question is simple: are ISP Appellees' claims, "by their nature, not their particular factual circumstance," the kind that "could only arise in the context of a bankruptcy case[?]"  *Stoe*,

436 F.3d at 217. Put differently, does this Adversary Proceeding "owe its existence to the filing of the bankruptcy petition[?]" *In re American Home Mortg. Holding*, 477 B.R. 517, 527 (Bankr. D. Del. 2012).

The Court finds that ISP Appellees' claims are based on state law and can exist outside the context of G-I's bankruptcy. *See Stoe*, 436 F.3d at 217 (explaining that matters do not "arise in" a bankruptcy case if matters could have been the subject of a lawsuit absent the filing of a bankruptcy case). Indeed, ISP Appellees' claims are all based on the 1996 Indemnification Agreement, a contract executed more than four years before G-I filed its bankruptcy petition.[15] *See Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989) ("[I]nterpretation of private contracts is ordinarily a question of state law."). Accordingly, ISP Appellees' "claims bear only a coincidental relationship to [GI's] bankruptcy case. They would have existed whether or not [G-I] filed [for] bankruptcy." *Valley Historic Ltd. P'ship. v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007). The Bankruptcy Court therefore lacks "arising in" jurisdiction over the Adversary Proceeding.

To be sure, the Court is unpersuaded by G-I Appellants' contention that "arising in" jurisdiction exists because ISP Appellees' claims "turn on their disputed interpretation of the Plan and Confirmation Order in [G-I's] bankruptcy case." (Mov. Br. 25). "[W]hile a court always has the inherent power to enforce its own orders, this cannot serve as an independent basis for federal jurisdiction." *In re Brooks Mays Music Co.*, 363 B.R. 801, 810 (N.D. Tex. 2007) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475-77 (1998)). G-I Appellants cite no law supporting the proposition that a bankruptcy court's power to interpret or enforce its orders—in and of itself—serves as an independent source of subject-matter jurisdiction.

---

[15]     For this reason, G-I Appellants' statement that ISP Appellees' claims "are not only inextricably intertwined with, *but in fact derive from*, G-I's Chapter 11 bankruptcy case" (Mov. Br. at 20) is hyperbole at best.

Indeed, all the cases G-I Appellants cite in support of this argument involve disputes arising either from the actual administration of the bankruptcy estate or rights specifically created by a bankruptcy court's order—proceedings "that by [their] nature could only arise in the context of a bankruptcy case." *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004); *see In re FAH Liquidating Corp.*, No. 13-13087, 2017 WL 663521, at *4 (Bankr. D. Del. Feb. 16, 2017) (finding "arising in" jurisdiction when bankruptcy estate's trustee based its "claims on rights that flow from the [plan] and from the Purchase Agreement which the [court] approved"); *In re HRNC Dissolution Co.*, No. 02-13261, 2015 WL 5299468, at *6 (Bankr. E.D. Ky. Sept. 9, 2015) (finding "arising in" jurisdiction when the plaintiff's claims were based on alleged bad acts committed during the bankruptcy proceeding); *In re Christ Hosp.*, No. 14-0472, 2014 WL 4613316, at *6-7 (D.N.J. Sept. 12, 2014) (finding "arising in" jurisdiction when plaintiff sought to attack sale authorized by bankruptcy court order); *In re General Growth Props., Inc.*, 460 B.R. 592, 598-99 (Bankr. S.D.N.Y. 2011) (finding "arising in" jurisdiction when the plaintiff filed suit against bankruptcy estate's trustee to recoup fees and expenses for services rendered to the bankruptcy estate); *Lothian Cassidy LLC v. Ransom*, 428 B.R. 555, 560 (Bankr. E.D.N.Y. 2010) (finding "arising in" jurisdiction because plaintiffs' claims concerned alleged professional malpractice in the actual administration of the bankruptcy estate).

Finally, to the extent G-I Appellants argue that the Bankruptcy Court has "arising in" jurisdiction because its Confirmation Order "retained exclusive jurisdiction" (Mov. Br. at 14, 21), this argument is likewise unavailing. The Third Circuit has explicitly stated that "neither the bankruptcy court nor the parties can write their own jurisdictional ticket." *In re Resorts Intern., Inc.*, 372 F.3d at 161. As a threshold matter, retention-of-jurisdiction provisions "will be given effect" only if the bankruptcy court has an independent basis of subject-matter jurisdiction. *Id.* If

there is no subject-matter jurisdiction, such "provisions in a plan of reorganization or trust agreement are fundamentally irrelevant." *Id.* Here, in light of the Court's finding that no "arising in" jurisdiction exists, the Confirmation Order's retention-of-jurisdiction provisions cannot serve as a basis for subject-matter jurisdiction.

Accordingly, the Court finds that the Bankruptcy Court did not err in determining that it lacks "arising in" jurisdiction.

## B. Mandatory Abstention

While the Bankruptcy Court found that it lacks "arising in" jurisdiction, it determined that "related to" jurisdiction exists over the Adversary Proceeding. (Remand Opinion at A894). "Related to" jurisdiction exists if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Stoe*, 436 F.3d at 216.

Under 28 U.S.C. § 1334(c)(2), however, even if a bankruptcy court has subject-matter jurisdiction, it must abstain from hearing an adversary proceeding when the following six factors are present: (i) a timely motion is made; (ii) the proceeding is based on a state-law claim or cause of action; (iii) the claim or cause of action is "related to" a case under title 11, but does not "arise under" title 11 and does not "arise in" a case under title 11; (iv) federal courts would not have jurisdiction over the claim but for its relation to a bankruptcy case; (v) an action "is commenced" in a state forum of appropriate jurisdiction; and (vi) the action can be "timely adjudicated" in a state forum of appropriate jurisdiction. *Id.* at 213.

On appeal, G-I Appellants target factors two and five. (Mov. Br. at 27). Specifically, G-I Appellants argue that "the Bankruptcy Court erred by finding that only 'related to' jurisdiction was present (factor two) . . . and by concluding that [] ISP Appellees had met their burden of establishing that this litigation can be 'timely adjudicated' in state court (factor five)." (*Id.*). Regarding the second factor, G-I Appellants contend that mandatory abstention cannot apply

because "arising in" jurisdiction exists. (*Id.* at 26) (citing *In re Seven Fields Dev. Corp.*, 505 F.3d at 251 (holding that mandatory abstention cannot apply where "arising in" jurisdiction exists); *Stoe*, 436 F.3d at 215 (same)). But as the Court found above, "arising in" jurisdiction does not exist here.

With respect to the fifth factor, G-I Appellants argue that the Bankruptcy Court erred by giving full weight to ISP Appellees' argument "that the New Jersey Superior Court's Complex Commercial Division 'is fully capable to look to the Plan's discharge provisions to determine whether G-I's affirmative defense applies' and that the Adversary Proceeding could be adjudicated expeditiously via summary judgment proceeding pursuant to N.J. Ct. R. 4:67-1 *et seq.*" (Mov. Br. at 28) (quoting Remand Opinion at A898). G-I Appellants instead assert that ISP Appellees' claims cannot be timely adjudicated because "there is a significant backlog of complex commercial cases" in New Jersey's Superior Court's Complex Commercial Division. (*Id.* at 28-29). And according to G-I Appellants, the Bankruptcy Court, rather than "a backlogged state court," is in a significantly better position—in light of its years of experience with this bankruptcy case—to timely adjudicate ISP Appellees' claims. (*Id.* at 31-32). In essence, G-I Appellants contend that ISP Appellees' claims would take longer to be adjudicated in state court than in bankruptcy court.

The Court is not persuaded. In assessing whether claims will be "timely adjudicated" in state court, the Third Circuit has explicitly stated that "[t]he question is not whether the action would be *more quickly* adjudicated in [the bankruptcy court] than in state court, but rather, whether the action can be *timely adjudicated* in the state court." *In re Exide Techs.*, 544 F.3d 196, 218 n.14 (3d Cir. 2008). In this context, the Third Circuit has advised courts that timely adjudication is determined with an eye toward the "needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *Stoe*, 436 F.3d

at 219.  In furtherance of this inquiry, some courts within this Circuit have examined the following factors: "(1) back log of the state court's calendar; (2) status of the bankruptcy proceeding; (3) complexity of issues; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate."  *In re Carriage House Condominiums L.P.*, 415 B.R. 133, 144 (Bankr. E.D. Pa. 2009).

Here, the Court finds that ISP Appellees' claims can be timely adjudicated in state court. With a discerning eye toward the "needs" of G-I's bankruptcy case, this Court sees no error in the Bankruptcy Court's finding that G-I's bankruptcy "Plan was confirmed some seven years ago and is nearly fully consummated."  (Remand Opinion at A899).  The Court agrees with the Bankruptcy Court that the needs of G-I's bankruptcy case are minimal because resolution of ISP Appellees' claims would not affect distributions to creditors and is unlikely to unduly impact the administration of the estate.  (*Id.* at A900).  Indeed, the Bankruptcy Court made these findings with, as G-I Appellants aptly put it, "its years of institutional knowledge and familiarity with the parties, the corporate history, the key transactional documents, the G-I bankruptcy proceeding, the parties' prior positions regarding responsibility for the LCP Site, the Confirmation Order and Plan, and the voluminous record in G-I's bankruptcy case."  (Mov. Br. at 30-31).

Further, G-I Appellants have offered no facts to suggest the needs of G-I's bankruptcy case are not minimal, saying only that "[w]hile the Plan was confirmed in late 2009 and significant progress has been made, the G-I bankruptcy remains pending." (Rep. Br. at 8).  And the Court finds it telling that, when asked by the Bankruptcy Court about the impact of ISP Appellees' claims on G-I's bankruptcy estate, G-I Appellants could point the Bankruptcy Court only to the impact on the legally distinct "reorganized debtor"—not the bankruptcy estate.  (*See* Tr. at 85:17-25); *In*

*re Lacy*, 183 B.R. 890, 891-92 (Bankr. D. Colo. 1995) (explaining that, after confirmation of Chapter 11 plan, debtor becomes a reorganized debtor, which is a new legal entity).[16]

The Court must reject GI-Appellant's invitations to find the New Jersey courts incapable of timely resolving state-law matters that coincidentally implicate bankruptcy law. *See, e.g.*, *In re Kmart Corp.*, 307 B.R. 586, 596 (Bankr. E.D. Mich. 2004) (holding that "state courts are qualified to interpret the language of bankruptcy plans and orders and routinely engage in such interpretation"). Here, the Superior Court of New Jersey is fully capable of "timely adjudicat[ing]" the Adversary Proceeding because it "primarily concerns resolution of a state law breach of contract claim and other related relief." (Remand Opinion at A898). Not only is "interpretation of contracts [] a matter of state law," *Volt Info. Sciences*, 489 U.S. at 474, but the New Jersey Rules of Court specifically permit parties to assert a "discharge in bankruptcy" as an affirmative defense. *See* N.J. Ct. R. 4:5-4; *see also N.Y. State Higher Educ. Servs. Corp. v. Lucianna,* 284 N.J. Super. 603, 605 (App. Div. 1995) (determining whether the debtor's student loan was discharged in bankruptcy and noting that promissory notes were governed by state law). Since the Bankruptcy Code treats a confirmed plan of reorganization as a "contract that is binding on all of the parties, debtor and creditors alike," *In re Subrite Cleaners, Inc.*, 284 B.R. 336, 342 (N.D.N.Y. 2002), the Court sees no reason why the Superior Court of New Jersey cannot interpret G-I's Plan to determine whether ISP Appellees' claims have been discharged.

Indeed, New Jersey courts routinely resolve complicated state-law matters that intersect with the Bankruptcy Code's discharge provisions. *See, e.g.*, *Foley, Inc. v. Fevco, Inc.*, 379 N.J. Super. 574, 588 (App. Div. 2005) (affirming lower court's holding that the dischargeability of

---

[16]     To be sure, the Court recognizes that the "burden of proof rests with the movants to show that abstention is required." *In re Carriage House*, 415 B.R. at 144. The Court finds that ISP Appellees' met their burden and adds these observations to underscore the propriety of Judge Gambardella's findings regarding G-I's bankruptcy.

some debts are not exclusively the jurisdiction of bankruptcy courts); *New Jersey Higher Educ. Assistance Auth. v. Pennell*, 377 N.J. Super. 13, 19-22 (App. Div. 2005) (surveying federal precedent and statute to determine whether a bankruptcy court's order confirming a bankruptcy plan, which was purported to discharge a debt, was valid); *N.Y. State Higher Educ. Servs. Corp.*, 284 N.J. Super. at 607 ("[S]tate courts have concurrent jurisdiction with federal courts to determine" whether a bankruptcy proceeding discharged a debt.).

In addition, the Court finds no error in the Bankruptcy Court's observation that the Superior Court of New Jersey's Complex Business Litigation Program (the "Program") "was created specifically for specialized attention to commercial cases, such as the instant matter."[17] (Remand Opinion at A898). Indeed, this program leverages "Complex Business Litigation Judges" who receive "extensive specialized training in all areas relating to business litigation." *See* Notice to the Bar at 1. The Court agrees with the Bankruptcy Court that the Superior Court of New Jersey is "fully capable" to timely adjudicate ISP Appellees' claims. (Remand Opinion at A898); *see also In re Exide Techs.*, 544 F.3d at 218 n.14 (finding that state court could timely adjudicate claims when docketed in special court-litigation program "designed to facilitate the adjudication of commercial disputes").

The Bankruptcy Court also observed that New Jersey Court Rule 4:67 permits expeditious resolution of certain claims and, further, that ISP Appellees filed a motion under Rule 4:67 before G-I Appellants removed the Adversary Proceeding to federal court. (Remand Opinion at A898). While G-I Appellants note that ISP Appellees' motion has since been denied without prejudice

---

[17] To the extent this determination—that the Adversary Proceeding is a complex case suitable for the Program—is a legal conclusion to be reviewed *de novo*, the Court finds that the Adversary Proceeding is, indeed, a complex case suitable for the Program. *See, e.g.*, Notice to the Bar at 1, http://www.njcourts.gov/notices/2014/n141113b.pdf (defining complex commercial cases as those involving "claims by, against, and among parties that arise out of business or commercial transactions and involve parties' exposure to potentially significant damages awards").

(Reply Br. at 13) (citing D.E. No. 26-1 ("Rule 4:67 Order")), that denial does not affect this Court's analysis, as the Superior Court expressly invited ISP Appellees to refile their motion should the Adversary Proceeding return there. (*See* Rule 4:67 Order). And G-I Appellants' concerns about the "administrative constraints" inherent in Track IV cases are insufficient to tip the balance in their favor. *See Boyer v. Snap-on Tools Corp.*, 913 F.3d 108, 111 (3d Cir. 1990) (noting that "all doubts should be resolved in favor of remand"). Accordingly, in light of the minimal needs of G-I's bankruptcy case and the Superior Court of New Jersey's ability to resolve ISP Appellees' claims expeditiously, the Bankruptcy Court did not err when it held that ISP Appellees' claims could be timely adjudicated in state court. The Court will therefore affirm the Bankruptcy Court's finding that abstention is required.

### C. Permissive Abstention

Under 28 U.S.C. § 1334(c)(1), even if a bankruptcy court is not required to abstain, it may, in its discretion, abstain from hearing matters when doing so would be "in the interest of justice, or in the interest of comity with State courts or respect for State law." The Second Circuit has described § 1334(c)(1) as "manifest[ing] federal respect for State law and policy." *In re Pan American Corp.*, 950 F.2d 839, 846 (2d Cir. 1991). Indeed, "[s]ection 1334(c) expresses a strong congressional desire that in respect to non-core proceedings the federal courts should not rush to usurp the traditional precincts of the state courts." *Cook v. Griffin*, 102 B.R. 875, 877 (Bankr. N.D. Ga. 1989); *see also In re Roddam*, 193 B.R. 971, 976 (Bankr. N.D. Ala. 1996) (finding that abstention statute evinces congressional policy that, absent countervailing circumstances, the trial of state-law-created issues and rights should be allowed to proceed in state court).

As a preliminary matter, the Court notes that the Third Circuit has never explicitly delineated factors that courts should consider in this context because "appeals of district court decisions involving permissive abstention, whether or not the court abstains, are barred."

*Geruschat v. Ernest Young LLP*, 505 F.3d 237, 249 (3d Cir. 2007); *see also* 28 U.S.C. § 1334(d). "As such, district courts in this circuit have not approached this type of analysis uniformly." *Monmouth Inv'r, LLC v. Saker*, No. 09-3063, 2010 WL 143687, at *4 (D.N.J. Jan. 12, 2010). While some courts have considered a set of twelve factors,[18] other courts have considered a set of seven factors.[19] Since "not all factors necessarily need to be considered," *id.*, courts need only apply the "factors flexibly, for their relevance and importance will vary with the particular circumstances of each case, and no one factor is necessarily determinative." *Geruschat*, 331 B.R. at 220.

The decision to abstain is left to the broad discretion of the bankruptcy court. *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987). When deciding whether to abstain, courts have considered a number of criteria, including the following factors:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. 750, 760 (Bankr. D.N.J. 1996). Courts in this Circuit also consider "the presence in the proceeding of nondebtor parties." *In re OMNA Medical Partners, Inc.*, 257 B.R. 666, 668 (Bankr. D. Del. 2000).

G-I Appellants contend that the Bankruptcy Court erred with respect to the first and third factors. Regarding the first factor, the Bankruptcy Court held that "the resolution of [ISP Appellees' claims] would not affect the distribution to creditors and is unlikely to unduly impact the administration of the estate." (Remand Opinion at A899-900). G-I Appellants argue that the

---

[18]    *See, e.g.*, *Geruschat v. Ernst & Young, LLP.*, 331 B.R. 208, 220 (Bankr. W.D. Pa. 2005); *Bricker v. Martin*, 348 B.R. 28, 34 (Bankr. W.D. Pa. 2006); *In re Legates*, 381 B.R. 111, 117 (Bankr. D. Del. 2008).

[19]    *See, e.g.*, *Jazz Photo Corp. v. Dreier LLP*, No. 05-5198, 2005 WL 3542468, at *20 (D.N.J. 2005).

Bankruptcy Court abused its discretion because it failed to consider "that principles of judicial efficiency and economy would be greatly advanced by a decision not to abstain." (Mov. Br. at 35). The Court is not aware of—nor have G-I Appellants provided—any law supporting the proposition that when courts consider the "effect on the efficient administration of the bankruptcy estate," courts should actually be examining "judicial efficiency and economy." *See In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. at 760 (considering only whether plaintiff's claims would "significantly hinder []or materially advance the efficient administration of the bankruptcy estate" in assessing this first factor). Accordingly, G-I Appellants have not demonstrated how the Bankruptcy Court—with its "near 16-year track record overseeing the G-I bankruptcy case"—abused its discretion in finding that ISP Appellees' claims would not unduly impact the administration of the estate. (Mov. Br. at 35).

Next, G-I Appellants argue that the Bankruptcy Court abused its discretion when it did "not even consider[] . . . that this Adversary Proceeding does not present unsettled issues of state law that warrant the exercise of permissive abstention." (*Id.* at 34-35). G-I Appellants are correct that the Bankruptcy Court does not appear to have explicitly considered whether ISP Appellees' claims present unsettled issues of state law. (*See* Remand Opinion at A898-900). And G-I Appellants are correct in that some courts, when analyzing the permissive-abstention factors, have stated that "[t]he primary determinant for the exercise of discretionary abstention is whether there exist unsettled issues of state law." *See In re Market Tower*, No. 89-0027, 1989 WL 641964, at *7 (quoting *In re Earle Indus., Inc.*, 72 B.R. 131, 133 (Bankr. E.D. Pa. 1987)).

Nevertheless, the Court is still not persuaded that the Bankruptcy Court abused its discretion when it found that permissive abstention is appropriate. Although the Bankruptcy Court did not address whether ISP Appellees' claims raise unsettled issues of state law, not all of the

permissive-abstention "factors necessarily need to be considered." *Monmouth Inv'r, LLC*, 2010 WL 143687, at *4. Even if ISP Appellees' claims are based on established principles of state law and, therefore, weigh against permissive abstention, "no one factor is necessarily determinative." *Geruschat*, 331 B.R. at 220.

The Bankruptcy Court's determination that permissive abstention is appropriate is amply supported by the other factors. For example, as noted above, since ISP Appellees' claims "will not affect the distribution to creditors and [are] unlikely to unduly impact the administration of the estate," this factor weighs in favor of abstention. *Monmouth Inv'r, LLC*, 2010 WL 143687, at *4 (finding this factor to weigh in favor of abstention because the plaintiff's claims "would neither significantly hinder nor materially advance efficient administration of the bankruptcy estate"). Indeed, G-I Appellants virtually conceded this point by failing to indicate how G-I's *bankruptcy estate* would be affected. (Tr. at 85:17-25) (stating at oral argument that "[t]he impact on the estate is that the reorganized Debtor is not getting the benefit of the discharge and the fresh start").[20]

Furthermore, "the degree of relatedness and remoteness of [ISP Appellees' claims] to the main bankruptcy case" also weighs in favor of abstention. *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.*, 194 B.R. at 760. As the Bankruptcy Court noted, G-I's bankruptcy Plan "was confirmed some seven years ago and is virtually fully consummated with the exception of certain residual claims proceedings." (Remand Opinion at A899). G-I Appellants have also not provided any facts from which the Court can second-guess the Bankruptcy Court's conclusion. "Simply because a debtor was once in bankruptcy does not mean that the bankruptcy court is an appropriate forum in which to litigate post-confirmation disputes between a reorganized debtor

---

[20]     Following this colloquy, ISP Appellees' counsel highlighted this distinction, stating, "You asked him what's the impact on [the] estate. He answered the impact is on New G-I. He didn't tell you of any impact on the estate." (Tr. at 87:16-24).

and its post-confirmation supplies." *In re Superior Air Parts, Inc.*, 516 B.R. 85, 98 (Bankr. N.D. Tex. 2014). Thus, since G-I's bankruptcy plan was confirmed seven years ago and is virtually fully consummated, this factor also substantially weighs in favor of abstention.

Additionally, "the presence . . . of nondebtor parties" in this case weighs heavily in favor of abstention. *In re OMNA Med. Partners, Inc.*, 257 B.R. at 668. As the Bankruptcy Court observed, and G-I Appellants fail to contest, "BMCA, a defendant in this action, is not a debtor." (*Id.* at 900). Thus, this factor also weighs in favor of abstention.

Lastly, the Court notes that the statute authorizing permissive abstention explicitly calls upon courts to consider "the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). To that end, the Bankruptcy Court noted that ISP Appellees' claims involve a "state law breach of contract claim and other related relief"—which "the state court is fully capable of resolving." (Remand Opinion at A899). Not only does the Court agree with the Bankruptcy Court's assessment, but the Court is also mindful that resolution of ISP Appellees' state law claims by the New Jersey Superior Court would serve the goals of judicial economy and comity. *See Triple T Constr. v. Twp. of W. Milford*, No. 14-2522, 2017 WL 123434, at *4 (D.N.J. Jan. 12, 2017) (stating that remanding to state court to resolve state claims "[w]ould serve the goals of judicial economy and comity by allowing the New Jersey courts to apply New Jersey law"). Accordingly, this final factor weighs in favor of abstention.

Thus, the Court finds no basis to conclude that the Bankruptcy Court abused its discretion. On balance, the relevant factors favor abstention. Although this analysis "is not merely a mathematical exercise of discerning how many factors favor the moving party," *Trans World Airlines, Inc. v. Karabu Corp.*, 196 B.R. 711, 715 (Bankr. D. Del. 1996), the Court does not see a basis to find that the Bankruptcy Court, with its "near 16-year track record overseeing the G-I

bankruptcy case," abused its discretion under § 1334(c)(1). The Court therefore finds that permissive abstention is warranted in this case.

**VI.    CONCLUSION**

For the foregoing reasons, the Court finds that no "arising in" jurisdiction exists over the Adversary Proceeding and that both mandatory and permissive abstention apply. Accordingly, the Court AFFIRMS the Bankruptcy Court's Remand Order.


*s/Esther Salas*
_____
**Esther Salas, U.S.D.J.**